**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Anthony J Gonsalves,<br><br>              Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>              Respondents. | No. CV-16-01774-PHX-DJH (BSB)<br><br>**REPORT**<br>**AND RECOMMENDATION** |

Petitioner Anthony J. Gonsalves has filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction for second-degree burglary. (Doc. 1.) Respondents assert that the Petition should be dismissed because Petitioner's claim lacks merit.[1] (Doc. 11.) Petitioner has not filed a reply in support of his Petition and the deadline has passed. (Doc. 13.) For the reasons below, the Court recommends that the Petition be denied.

**I.     Factual and Procedural Background**

  **A.     The Incident Leading to the Challenged Conviction**

On the day of the incident that resulted in the conviction challenged in this matter, the victim, J.W., returned home and noticed a truck with its tailgate down parked in his

---

[1] Respondents assert that "there are issues" regarding whether the Petition is timely and whether Petitioner exhausted his claim. (Doc. 11 at 2.) However, Respondents do not address those issues because they assert that the Petition can be resolved by considering the merits of Petitioner's claim. (*Id.*) Therefore, the Court does not address these issues.

1 driveway.² (Doc. 1 at 17.) He then saw Petitioner exit the front door of his house. (*Id.*)
2 When J.W. asked Petitioner what he was doing, Petitioner ran to the truck. (*Id.*) J.W.
3 wrote down the truck's license plate number and called the police. (*Id.*) When J.W. went
4 inside his house, he saw his dishwasher near the front door. (*Id.*) The dishwasher hose
5 was cut and there was a trail of water from the kitchen to the front door. (*Id.*) The stove
6 was moved away from the kitchen wall and a basement window was broken. (*Id.*)

Police traced the license plate number to a business entity and learned that Petitioner had been assigned that truck the day of the incident. (*Id.* at 17-18.) Petitioner, however, had not worked any jobs the day. (*Id.* at 18.) J.W. identified Petitioner from a photographic line-up as the man he saw leaving his house. (*Id.*) Upon questioning, Petitioner admitted to police he drove the truck the day of the incident. (*Id.*) He also admitted that he was at the victim's home, and that he did not have permission to be at or inside the house. (*Id.* at 20.)

### B.     Charges, Trial, and Sentence

Petitioner was indicted for burglary in the second degree, a class three felony. (*Id.*) During the trial, Annabelle Penrose, a latent print examiner for the Scottsdale Police Department, testified for the State. (Doc. 11, Ex. A at 100.) Penrose testified that three latent prints were obtained from the crime scene. (*Id.* at 102.) She stated that two of the latent prints lacked sufficient ridge detail to be compared directly to a known print or to be run through a fingerprint database to find a match. (Doc. 1, Ex. A at 102, 106.) She testified that the third latent print (the good latent print) was run through the database and was not a match. (*Id.* at 106.) She further testified that, at the prosecutor's request, she had compared all three latent prints to a known print of Petitioner. (*Id.*) The prosecutor and Penrose engaged in the following exchange about the results of that test:

Q.     And what was the result of that?

A.     That result was that it was — there was *no* match.

---

² The facts are derived from the Arizona Court of Appeals decision, which does not identify the date of the incident. (Doc. 1 at 16-21.)

1  Q. Okay.
2  A. No identification.
3  Q. Okay. So the one print that we get from the scene *does match* the
4  defendant?
5  A. That's correct.
6  [The prosecutor]: No further questions.
7  (*Id.* at 106−07) (emphasis added).)

8  On cross-examination, defense counsel addressed the fingerprint evidence. (Doc. 11, Ex. A at 107-114.) Penrose again stated that the good latent print did not "come back as a hit" when it was run through the fingerprint database. (*Id.* at 111.) She also reiterated that she compared the good latent print to a known fingerprint of Petitioner and it "was not a match." (*Id.* at 111-12.) Penrose engaged in the following exchange with defense counsel:

14  Q. Okay. And so this isn't a computer thing. This is you using your training,
15  skills, experience, your own eyes? You're the one doing this comparison?
16  A. That's correct. Yes.
17  Q. Okay. And you got a lot of training, right?
18  A. I have a lot of experience and training, yes.
19  Q. Okay. And so your judgment, no, that was *not a match,* correct?
20  A. *Correct*. Yes.
21  (*Id.* at 111-12 (emphasis added).)

22  During closing argument, defense counsel emphasized the lack of evidence of Petitioner's fingerprints at the crime scene. (Doc. 1, Ex. B at 95.) The jury found Petitioner guilty as charged. (Doc. 1 at 18.) Because Petitioner was on parole at the time of the crime and had twelve prior felony convictions, the trial court sentenced him to 11.25 years' imprisonment. (*Id.*)

27  ///
28

C.  **Direct Appeal**

Petitioner appealed to the Arizona Court of Appeals. (Doc. 1 at 16.) Appellate counsel notified the court that he could not find an arguable question of law and asked the appellate court to search the record for fundamental error. (*Id*. at 17.) The appellate court affirmed Petitioner's conviction and sentence stating that it found no fundamental error and there was substantial evidence against Petitioner. (*Id.* at 18-20.)

D.  **Post-Conviction Review**

Petitioner sought post-conviction relief under Rule 32 of the Arizona Rules of Criminal Procedure, asserting ineffective assistance of appellate and post-conviction counsel. (*Id*. at 12.) The court considered and rejected Petitioner's claims of ineffective assistance of appellate and post-conviction counsel. (*Id.*) Although Petitioner did not specifically raise a claim of ineffective assistance of trial counsel, the court considered that potential claim and found that it lacked merit. (*Id.*) Petitioner filed a petition for review in the Arizona Court of Appeals. (*Id.* at 22.) On June 2, 2015, the court granted review, but denied relief. (*Id.* at 22.)

E.  **Federal Petition for Writ of Habeas Corpus**

On June 6, 2016, Petitioner filed a petition for writ of habeas corpus in this Court. (Doc. 1.) In his only claim, Petitioner asserts that "counsel was ineffective for failing to raise an objection to the States [sic] finger print expert giving false testimony in my trial under oath." (*Id.* at 6.) Petitioner cites to the specific page of the trial transcript where the alleged false statement appears. (Doc. 1 at 6 (citing Jan. 5, 2011 trial transcript at 106); *see* Doc. 11, Exs. A and B.) As stated above, Respondents argue that regardless of whether Petitioner exhausted his claim, the Court should deny habeas corpus relief because Petitioner's claim lacks merit. (Doc. 11 at 5); *see* 28 U.S.C. § 2254(b)(2) (providing that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

## II. Review of Petitioner's Claim

### A. *Strickland* Standard for Ineffective Assistance of Counsel

Petitioner asserts a single claim of ineffective assistance of trial counsel. (Doc. 1 at 6.) To establish a Sixth Amendment claim of ineffective assistance, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Id.* at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Id.* "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Review of counsel's performance is extremely limited. *Id.* Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Id.*

To establish prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. The court need not address both *Strickland* requirements if the petitioner makes an insufficient showing on one. *See id.* at 697 (explaining that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (stating that "[f]ailure to satisfy either prong of the *Strickland* test obviates the need to consider the other") (citing *Strickland*, 466 U.S. at 688).

### B. Application of *Strickland* to Petitioner's Claim

Petitioner asserts that trial counsel was ineffective for failing to object when Penrose allegedly gave false testimony under oath. (Doc. 1 at 6.) Petitioner's claim is based on Penrose's testimony regarding whether Petitioner's fingerprints were a match

for the good latent print found at the crime scene. (*Id.*) On direct examination, Penrose testified that the latent print "was no match." (Doc. 11, Ex. A at 106.) She immediately emphasized that there was "no identification." (*Id.*) The prosecutor then asked, "So the one print we get from the scene *does match* the defendant." (*Id.*) (emphasis added). Penrose responded "That's correct." (*Id.*) Because Penrose initially stated there was no match, Petitioner asserts that Penrose testified falsely when she agreed with the prosecutor's statement that the latent print "from the scene does match the defendant." (Doc. 1 at 6.)

Petitioner argues that trial counsel was ineffective for failing to object to that false testimony. As discussed below, the record does not support Petitioner's characterization of Penrose's testimony as false. Rather, because Penrose otherwise consistently testified that Petitioner was not a match for the latent prints, it appears that when she responded "[t]hat's correct," to the prosecutor's statement that Petitioner was a match, she may have misunderstood the prosecutor's statement, given an incorrect answer, or there may have been a transcription error. On cross-examination, Penrose reiterated that none of the latent prints from the crime scene, including the good print, were a match for Petitioner. (Doc. 11, Ex. A at 111-12.) Additionally, during closing argument, defense counsel emphasized that Petitioner was not a match for the latent print. (Doc. 11, Ex. B at 95.)

From the record, the Court concludes that the jury heard evidence that the latent prints from the crime scene were not a match for Petitioner. Although Penrose made a single statement indicating that Petitioner was a match for one of those prints, in the context of the transcript, it appears that the statement was an error and not a false statement. Therefore, trial counsel was not deficient for failing to object to Penrose's testimony as false. Petitioner has not shown that trial counsel's failure to object to Penrose's misstatement was objectively unreasonable, even if, in hindsight, an objection might have been a better decision. *See Ayala v. Chappell*, ___F.3d___, 2016 WL 3913446, at * 13 (9th Cir. Jul. 20, 2016); *see also Strickland*, 466 U.S. at 689-91.

Additionally, even assuming Petitioner satisfied the first *Strickland* requirement, he has not established prejudice because he has not shown that, but for trial counsel's failure to object to Penrose's challenged testimony, there is a reasonable probability that the outcome of his trial would have been different. *See Strickland*, 466 U.S. at 694. The record reflects that on one occasion during the trial, Penrose apparently made a misstatement regarding whether Petitioner was a match for a latent print found at the scene. However, she stated several times that Petitioner was not a match for the latent prints, and during closing argument defense counsel emphasized the absence of Petitioner's fingerprints at the crime scene. Therefore, most of the evidence the jury heard about the fingerprint evidence indicated that Petitioner's fingerprints were not at the crime scene.

Despite the lack of fingerprint evidence, the State presented substantial evidence that connected Petitioner to the charged burglary. The victim testified that he saw Petitioner walk out of his house and run to a truck that was parked in front of the house. (Doc. 1 at 20.) He recorded the truck's license plate number and police later connected Petitioner to that truck. The victim testified that when he entered his house after Petitioner had fled, he saw that several large kitchen appliances had been moved and a basement window was broken. Petitioner admitted to police that he was at the victim's house on the date of the incident and that he did not have permission to be at or inside the house. (*Id.*) Considering this evidence that connected Petitioner to the crime scene, Petitioner cannot show that, but for trial counsel's failure to object to Penrose's allegedly false statement about the fingerprint evidence, there is a reasonable probability that the result of the trial would have been different. Therefore, Petitioner has not established that trial counsel was ineffective under the Sixth Amendment. *See Strickland*, 466 U.S. at 700.

### III. Conclusion

The Court concludes that Petitioner's claim lacks merit and recommends that the Petition be denied.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 22nd day of December, 2016.

_____
Bridget S. Bade
United States Magistrate Judge